Approved: *Thomas John Wright*
THOMAS JOHN WRIGHT
Assistant United States Attorney

Before: THE HONORABLE STEWART D. AARON
United States Magistrate Judge
Southern District of New York

19MAG 8302

------------------- x
                    :   **SEALED COMPLAINT**
                    :
UNITED STATES OF AMERICA   :   Violations of 18 U.S.C.
                    :   §§ 371, 545, 2318, 2320,
      - v. -        :   2342, and 2.
                    :
HAI JIAO DAI,       :   COUNTY OF OFFENSE:
   a/k/a "Jay,"     :   NEW YORK
   a/k/a "Jet," and :
XIN HUI ZHOU,       :
   a/k/a "Darin,"   :
                    :
            Defendants. :
------------------- X

SOUTHERN DISTRICT OF NEW YORK, ss.:

NICOLE GORDON, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**

(Conspiracy to Traffic in Contraband Cigarettes
and Smuggle Cigarettes)

1. From at least in or about December 2018 up to and including at least in or about September 2019, in the Southern District of New York and elsewhere, HAI JIAO DAI, a/k/a "Jay," a/k/a "Jet," and XIN HUI ZHOU, a/k/a "Darin," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Title 18, United States Code, Sections 545 and 2342.

2. It was a part and an object of the conspiracy that HAI JIAO DAI, a/k/a "Jay," a/k/a "Jet," and XIN HUI ZHOU, a/k/a "Darin," the defendants, and others known and unknown, did knowingly ship, transport, receive, possess, sell, distribute, and purchase contraband cigarettes, as that term is defined in

Title 18, United States Code, Section 2341, in violation of Title 18, United States Code, Section 2342.

3. It was further a part and an object of the conspiracy that HAI JIAO DAI, a/k/a "Jay," a/k/a "Jet," and XIN HUI ZHOU, a/k/a "Darin," the defendants, and others known and unknown, did knowingly and willfully, with intent to defraud the United States, smuggle and clandestinely introduce into the United States merchandise which should have been invoiced, in violation of Title 18, United States Code, Section 545.

**OVERT ACTS**

4. In furtherance of said conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    a. On or about May 17, 2019, HAI JIAO DAI, a/k/a "Jay," a/k/a "Jet," and XIN HUI ZHOU, a/k/a "Darin," the defendants, caused to be shipped approximately six boxes of cigarettes into the United States, which were delivered to an address in New York, New York.

    b. On or about June 24, 2019, HAI JIAO DAI, a/k/a "Jay," a/k/a "Jet," and XIN HUI ZHOU, a/k/a "Darin," the defendants, caused to be shipped approximately five boxes of cigarettes into the United States, which were delivered to an address in New York, New York.

    c. On or about June 26, 2019, HAI JIAO DAI, a/k/a "Jay," a/k/a "Jet," and XIN HUI ZHOU, a/k/a "Darin," the defendants, caused to be shipped approximately 15 boxes of cigarettes into the United States, which were delivered to an address in New York, New York.

(Title 18, United States Code, Section 371.)

**COUNT TWO**

(Trafficking in Contraband Cigarettes)

5. From at least in or about May 2019 up to and including at least in or about June 2019, in the Southern District of New York and elsewhere, HAI JIAO DAI, a/k/a "Jay," a/k/a "Jet," and XIN HUI ZHOU, a/k/a "Darin," the defendants, did knowingly ship, transport, receive, possess, sell, distribute, and purchase contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341, to wit, a quantity of more

than 10,000 cigarettes, which bore no evidence of the payment of applicable local or state cigarette taxes in the City or State of New York.

(Title 18, United States Code, Sections 2342 and 2.)

### COUNT THREE

(Smuggling Goods into the United States)

6.  From at least in or about May 2019 up to and including at least in or about June 2019, in the Southern District of New York and elsewhere, HAI JIAO DAI, a/k/a "Jay," a/k/a "Jet," and XIN HUI ZHOU, a/k/a "Darin," the defendants, willfully and knowingly, with intent to defraud the United States, did smuggle and clandestinely introduce into the United States merchandise which should have been invoiced, to wit, more than 100,000 cigarettes with an approximate value of more than $65,000.

(Title 18, United States Code, Sections 545 and 2.)

### COUNT FOUR

(Conspiracy to Traffic in Counterfeit Goods)

7.  From at least in or about December 2018 up to and including in or about September 2019, in the Southern District of New York and elsewhere, HAI JIAO DAI, a/k/a "Jay," a/k/a "Jet," and XIN HUI ZHOU, a/k/a "Darin," the defendants, and others known and unknown, knowingly and willfully did combine, conspire, confederate, and agree together and with each other, to traffic in goods and services and knowingly did use a counterfeit mark on and in connection with such goods and services.

(Title 18, United States Code, Section 2320.)

### COUNT FIVE

(Trafficking in Counterfeit Goods)

8.  From at least in or about May 2019 up to and including in or about June 2019, in the Southern District of New York and elsewhere, HAI JIAO DAI, a/k/a "Jay," a/k/a "Jet," and XIN HUI ZHOU, a/k/a "Darin," the defendants, intentionally did traffic and attempt to traffic in goods and services, and did knowingly use a counterfeit mark on and in connection with such goods and services, to wit, DAI and ZHOU imported counterfeit cigarettes from China for sale in the United States.

(Title 18, United States Code, Sections 2320 and 2.)

## COUNT SIX

(Trafficking in Counterfeit Packaging)

9.  From at least in or about May 2019 up to and including in or about June 2019, in the Southern District of New York and elsewhere, HAI JIAO DAI, a/k/a "Jay," a/k/a "Jet," and XIN HUI ZHOU, a/k/a "Darin," the defendants, using and intending to use the mails and facilities of interstate and foreign commerce, did knowingly traffic in counterfeit documentation and packaging, to wit, DAI and ZHOU imported counterfeit cigarettes from China for sale in the United States.

(Title 18, United States Code, Sections 2318(a)(1)(B) and 2.)

10.  The bases for my knowledge and for the foregoing charge are, in part, described in the following paragraphs.

11.  I have served for approximately three years in the FBI, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement officers and other individuals, as well as my examination of reports and other records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported in this Complaint, they are reported in substance and part, except where otherwise indicated.

12.  Based on my conversations with a witness ("Witness-1")[1] and other law enforcement officers, my communications with representatives of a tobacco company based in the United States ("Tobacco Company-1"), my participation in certain physical surveillance operations, my review of shipping records obtained from an international air freight shipping company ("Shipping

---

[1] Witness-1 is a person whose identity is known to me who has provided information to law enforcement in connection with other investigations, which information proved reliable. Witness-1 was previously convicted of certain crimes in the United States District Court for the Southern District of New York but has concluded the sentence for those convictions. Witness-1 is not seeking any benefit in exchange for the information that Witness-1 is providing in connection with this investigation.

4

Company-1"), my review of communications transmitted through a messaging application, including written communications in Chinese characters, certain translations of the same, my review of certain recordings of in-person and telephone conversations, including conversations in Mandarin, certain translations of the same, and my review of certain reports and other records generated from the investigation, I have learned, among others things, the following, in substance and part:

        a.    Since 2018, I and other law enforcement agents have been investigating a cigarette smuggling organization ("CSO") that smuggles large quantities of cigarettes, including counterfeit cigarettes, into the United States by, in part, shipping packages of such cigarettes through Shipping Company-1 from China to the United States, including locations in the Southern District of New York. To evade the payment of taxes on these cigarettes, the packages are typically labeled as other items that do not have high retail value, such as light bulbs or cellphone cases. The cigarettes are then able to be sold without the payment of any taxes on cigarettes imposed in the United States. Based on my review of shipping records obtained from Shipping Company-1 and information provided by Witness-1, HAI JIAO DAI, a/k/a "Jay," a/k/a "Jet," and XIN HUI ZHOU, a/k/a "Darin," the defendants, are members of the CSO, who are smuggling contraband cigarettes into the United States via Shipping Company-1.

        b.    In or about December 2018, Witness-1 informed the FBI that DAI recently approached Witness-1 and asked whether Witness-1 would be interested in purchasing counterfeit cigarettes manufactured in China for Witness-1 to resell in the United States. In particular, the counterfeit cigarettes would be manufactured and packaged so as to appear like a popular brand of cigarettes manufactured by Tobacco Company-1, which I know holds multiple trademarks for this popular brand.

        c.    In the course of Witness-1's interactions with DAI, Witness-1 received a sample of these counterfeit cigarettes from DAI, which Witness-1 provided to the FBI, which in turn provided them to a representative of Tobacco Company-1. After analyzing the sample, a representative of Tobacco Company-1 confirmed to the FBI that the cigarettes were indeed counterfeit.

        d.    At the direction of the FBI, Witness-1 agreed to discuss the purchase of counterfeit cigarettes with DAI. In or about March 2019, another law-enforcement officer and I conducted physical surveillance of a meeting at a location

in Queens County, New York between Witness-1 and DAI, whose identity I established through information provided by Witness-1 and a review of the photograph associated with DAI's New York State Driver's License, among other investigative steps. At this meeting, at which Witness-1 wore an audio-recording device, Witness-1 discussed ordering a quantity of counterfeit cigarettes from DAI.

        e.    Thereafter, in or about May 2019, another law-enforcement officer and I conducted physical surveillance of a further meeting at a location in Queens County, New York at which DAI introduced Witness-1 to ZHOU, whose identity I established through information provided by Witness-1 and a review of the photograph associated with ZHOU's New York State Driver's License, among other investigative steps. At this meeting, at which Witness-1 wore an audio-recording device, DAI and ZHOU described to Witness-1 how their counterfeit cigarettes were manufactured in China and imported to the United States. At the direction of the FBI, Witness-1 agreed to purchase a quantity of the counterfeit cigarettes from DAI and ZHOU.

        f.    Thereafter, in or about May 2019, in group communications transmitted through a messaging application, DAI and ZHOU informed Witness-1 that the shipment of counterfeit cigarettes had arrived and arranged a meeting with Witness-1 to deliver the shipment in exchange for payment at a location in Queens County, New York. Prior to this meeting, DAI and ZHOU provided Witness-1 with a tracking number for the shipment, which Shipping Company-1 was carrying from China to the United States.

        g.    Based on my review of records obtained from Shipping Company-1 associated with this tracking number, I have learned that the customs waybill for the shipment, which consisted of six boxes, listed their contents as "Dataline" in a quantity of "500 pieces" and of a value of $0.31 per piece. Further, I have learned that the six boxes were delivered from China on or about May 17, 2019 to an address on Tenth Avenue in New York, New York ("Address-1").

        h.    Thereafter, in or about May 2019, I and other law-enforcement officers conducted physical surveillance around the meeting arranged by DAI and ZHOU, at which Witness-1 met ZHOU. During this meeting, Witness-1 handed ZHOU thousands of dollars of United States currency. Following this hand-to-hand transaction, ZHOU walked to a car in which he had arrived at the meeting and removed six boxes that he provided to Witness-1.

     i. Following the meeting, I and other law-enforcement officers opened the six boxes, certain of which bore an image of light bulbs and were labeled in Chinese characters with the name of a purported lighting company and a description of purported lighting equipment. Inside, the six boxes, we found cartons of cigarettes that were packaged and otherwise marked as the popular brand of cigarettes manufactured by Tobacco Company-1 containing approximately 43,200 cigarettes. Based on my training and experience, I know that cigarettes manufactured for retail sale in the United States are subject to taxes and that cigarettes on which those taxes have been paid bear an official tax stamp of the state where they are to be sold. The packages inside the six boxes did not have tax stamps affixed to them. Instead, inside the six boxes were sheets of what purported to be official tax stamps from Virginia in a condition that made them ready to be affixed to the packages. Based on my conversations with other law-enforcement officers, I know that these sheets were not legitimate because the manner in which they were printed did not conform to legitimate tax stamps from Virginia.

     j. Thereafter, in or about June 2019, in group communications transmitted through a messaging application and at the direction of the FBI, Witness-1 ordered a further shipment of counterfeit cigarettes from DAI and ZHOU, who eventually provided Witness-1 with tracking numbers for the shipment, which Shipping Company-1 was carrying from China to the United States.

  13. In or about June 2019, based on information obtained from Shipping Company-1, I learned that the tracking numbers that HAI JIAO DAI, a/k/a "Jay," a/k/a "Jet," and XIN HUI ZHOU, a/k/a "Darin," the defendants, provided to Witness-1 in connection with this further order corresponded to a certain account at Shipping Company-1 ("Subject Shipping Account"), which agreed to inform the FBI of any other packages that might be shipped using the Subject Shipping Account.

  14. On or about June 24, 2019, a representative of Shipping Company-1 alerted the FBI to five boxes that were being shipped by the Subject Shipping Account from China and had been delivered to Address-1.

     a. Based my training and experience, I know that Shipping Company-1, as a common carrier, holds a right of inspection with respect to boxes that it ships. On or about June 24, 2019, pursuant to this authority, a representative of Shipping Company-1 gave the FBI consent to open the five boxes,

7

inside of which I and another law-enforcement officer found cartons of cigarettes.

        b. Thereafter, I obtained a warrant to search and seize the five boxes, which the Honorable Robert W. Lehrburger, United States Magistrate Judge for the Southern District of New York, issued and I executed on or about June 25, 2019. Pursuant to this warrant, I found that the boxes contained approximately 73,800 cigarettes, which were packaged so as to appear like brands of cigarettes manufactured by tobacco companies based in China and which did not have tax stamps affixed to their packages.

    15. On or about June 26, 2019, a representative of Shipping Company-1 alerted the FBI to 15 boxes that were being shipped by the Subject Shipping Account from China and had been delivered to Address-1.

        a. Of the 15 boxes, eight boxes were associated with the tracking numbers that HAI JIAO DAI, a/k/a "Jay," a/k/a "Jet," and XIN HUI ZHOU, a/k/a "Darin," the defendants, had provided to Witness-1 for the further order of counterfeit cigarettes.

        b. Based on records obtained from Shipping Company-1, I know that the customs waybill for the boxes comprising the further order listed their contents as "plastic protective case for mobile phone" in a quantity of "320 pieces" and of a value of $0.42 per piece.

        c. Thereafter, I obtained a warrant to search and seize the 15 boxes, which the Honorable Sarah Netburn, United States Magistrate Judge for the Southern District of New York, issued and I executed on or about June 26, 2019. Pursuant to this warrant, I found that the eight boxes comprising the further order contained cartons of cigarettes that were packaged and otherwise marked as the popular brand of cigarettes manufactured by Tobacco Company-1 containing approximately 57,600 cigarettes. I found that the remaining seven boxes contained approximately 100,000 cigarettes, which were packaged so as to appear like brands of cigarettes manufactured by tobacco companies based in China. None of the packages of cigarettes in any of the boxes had tax stamps affixed to them.

    16. Based on my training and experience and my conversations with other law-enforcement officers, I know that the value of one package containing approximately 20 cigarettes of the popular brand of cigarettes manufactured by Tobacco

8

Company-1 is conservatively $13.00 in the metropolitan area of the City of New York.

   WHEREFORE, deponent respectfully requests that arrest warrants be issued for HAI JIAO DAI, a/k/a "Jay," a/k/a "Jet," and XIN HUI ZHOU, a/k/a "Darin," the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

_____
NICOLE GORDON
Special Agent
Federal Bureau of Investigation


Sworn to before me this
3rd day of September, 2019

_____
THE HONORABLE STEWART D. AARON
United States Magistrate Judge
Southern District of New York